AO 243 (Rev. 5/85)

**MOTION UNDER 28 USC § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY**

FILED
NOV 21 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| **United States District Court** | District COLUMBIA | |
|---|---|---|
| Name of Movant: TIMOTHY L. JENNINGS | Prisoner No. 07339-016 | Case No. CR-06-088-01 |
| Place of Confinement: FEDERAL CORRECTIONAL INSTITUTION MCKEAN/P.O. BOX 8000/BRADFORD, PENNSYLVANIA | | |

UNITED STATES OF AMERICA        V.        TIMONTY L. JENNINGS
(name under which convicted)

## MOTION

1. Name and location of court which entered the judgment of conviction under attack UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA/U.S COURTHOUSE/333 CONSTITUTION AVENUE N.W./ WASHINGTON, D.C. 20001

2. Date of judgment of conviction  AUGUST 23, 2006.

3. Length of sentence  150 months on each of the six counts to run concurrent with each other.

4. Nature of offense involved (all counts)  Six Counts of Unarmed Bank Robbery, contrary to 18 U.S.C. § 2113(a).

5. What was your plea? (Check one)
   (a) Not guilty ☐
   (b) Guilty ☒
   (c) Nolo contendere ☐

   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

   N/A

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury ☐
   (b) Judge only ☐

7. Did you testify at the trial?
   Yes ☐ No ☐

8. Did you appeal from the judgment of conviction?
   Yes ☐ No ☒

(2)

AO 243 (Rev. 5/85)

9. If you did appeal, answer the following:

    (a) Name of court _____ N/A _____

    (b) Result _____

    (c) Date of result _____

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications or motions with respect to this judgment in any federal court?
Yes ☐ No ☐

11. If your answer to 10 was "yes," give the following information:

    (a) (1) Name of court _____ N/A _____

       (2) Nature of proceeding _____

       (3) Grounds raised _____

       (4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐ No ☐

       (5) Result _____ N/A _____

       (6) Date of result _____

    (b) As to any second petition, application or motion give the same information:

       (1) Name of court _____ N/A _____

       (2) Nature of proceeding _____

       (3) Grounds raised _____ N/A _____

AO 243 (Rev. 5/85)

    (4) Did you receive an evidentiary hearing on your petition, application or motion?
        Yes ☐ No ☐

    (5) Result _____ **N/A** _____

    (6) Date of result _____

  (c) Did you appeal, to an appellate federal court having jurisdiction, the result of action taken on any petition, application or motion?
    (1) First petition, etc.    Yes ☐ No ☐
    (2) Second petition, etc.    Yes ☐ No ☐

  (d) If you did not appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

**N/A**

12. State *concisely* every ground on which you claim that you are being held in violation of the constitution, laws or treaties of the United States. Summarize briefly the facts supporting each ground. If necessary, you may attach pages stating additional grounds and facts supporting same.

    CAUTION If you fail to set forth all ground in this motion, you may be barred from presenting additional grounds at a later date.

    For your information, the following is a list of the most frequently raised grounds for relief in these proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you have other than those listed. However, you should raise in this motion all available grounds (relating to this conviction) on which you based your allegations that you are being held in custody unlawfully.

    Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The motion will be returned to you if you merely check (a) through (j) or any one of the grounds.

  (a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily or with understanding of the nature of the charge and the consequences of the plea.
  (b) Conviction obtained by use of coerced confession.

AO 243 (Rev. 5/85)

   (c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.
   (d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.
   (e) Conviction obtained by a violation of the privilege against self-incrimination.
   (f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.
   (g) Conviction obtained by a violation of the protection against double jeopardy.
   (h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impanelled.
   (i) Denial of effective assistance of counsel.
   (j) Denial of right of appeal.

A. Ground one: MOVANT IS ENTITLED TO A DIRECT APPEAL AS OF RIGHT WHERE HIS ATTORNEY RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL BY NOT FILING A NOTICE OF APPEAL AS MOVANT REQUESTED.

Supporting FACTS (state *briefly* without citing cases or law) Under the advisement of counsel, Movant entered into a written plea agreement with the Government which in pertinent part provides that the guideline applicable to the offenses is § 2B3.1(a), which sets a base level of 20. Further, the offense involved the property of a financial institution, therefore a two-level adjustment of the offense is applicable under § 2B3.1(b)(1). Finally, under 3D1.4, a maximum five-level adjustment applies for the multiple counts. This results in an adjusted offense level of 27. The Government further agreed not to oppose a three level reduction of Movant's offense level pursuant to 3E1.1, which would decrease the adjusted offense level to 24. The Government also agreed not to oppose a sentence at the low end of the guideline range and to forgo prosecuting Movant in connection with the offense in this case for the incidents committed on December 8, 16, and 19, 2005; January 19, 2006; and February 6, and 15, 2007. The Presentence Investigation Report computed an additional two-level increase (See Addendum).

B. Ground two: MOVANT IS ENTITLED TO RESENTENCING WHERE COUNSEL RENDERED INEFFECTIVE ASSISTANCE AT THE SENTENCING HEARING.

Supporting FACTS (state *briefly* without citing cases or law): On August 23, 2006, Movant entered a guilty plea to Counts One through Three of the consolidated cases (i.e. CR-06-088-01; CR-06-233-01)). Under the plea agreement the appropriate sentencing range was 100-125 months. The Probation Department, however, concluded that the counts of conviction included a threat of death under U.S.S.G. § 2B3.1(b)(2)(F) of the guidelines and that this was not taken into account by the parties. See PSR ¶ 168. Movant objected to the two-level increase and prior to sentencing the Government filed a Memorandum In Aid of Sentencing indicated, inter alia, that the United States did consider the threat of death provision but did not include a two-level adjustment because the maximum adjustment for multiple counts adequately addressed the penal interest of the Government. See (DE #20 @ pp. 4-5). Accordingly, the Government stated that it stood by its agreement that the sentencing range of 100-125 months was adequate. Id. @ p. 5. Movant was concerned about the two-level adjustment because it increased the (see Addendum).

C. Ground three: _____

N/A

Supporting FACTS (state *briefly* without citing cases or law): _____

N/A

## ADDENDUM TO § 2255 MOTION

**Ground One (Continued):**
under U.S.S.G. § 2B3.1(b)(2(F), alleging that a threat of death occurred. **See PSR § ¶¶ 44, 36, 52, 68, 76, 60.** The Government agreed that this two-level ehancement for death threat under 2B3.1(b)(2)(F), was not included in the plea agreement and that "the parties agree[d] that there are no additional relevant adjustments or departures, and neither side [would] argue otherwise." **See (DE #20 @ p. 3); see also (DE #92 p. 3, ¶ 6).** In fact, the government indicated that it stood by the terms of the plea agreement because it sufficiently penalizes Movant for the offenses of conviction under the "maximum adjustment for multiple offenses" which resulted in a five-level increase under U.S.S.G. § 3D1.4. **(DE #20 @ pp. 4-5).**

Prior to the November 15, 2006, Sentencing Hearing, Movant filed his objection to the two-level enhancement for threat of death. At the sentencing hearing, the Court overruled Movant's objections finding that the two-level enhancement for threat of death was established by the preponderance of evidence. The Court then concluded that the Adjusted Offense Level for each of the six counts was 24 and that a five level increase for multiple counts resulted in a Combined Adjusted Offense Level of 29. Because Movant demonstrated an acceptance of responsibility, the Court applied a three (3) level decrease which resulted in a Total Offense Level of 26. The Court further found that his Criminal History Score was 17, for a Criminal History Category of VI. This yielded a sentencing range of 120 to 150 months. **See U.S.S.G. Ch. 5 Part A.** The Court imposed a sentence of 150 months.

Following the Sentencing Hearing, Movant instructed Attorney Radasill to appeal the sentence and Attorney Radasill indicated that he would discussed the matter further with Movant in the holding-cell area of the courthouse designated for attorney-client conferences. **See Timothy L. Jennings' Declaration ("herein after "Jennings' Decl." @ ¶ 16).** Attorney Radasill never came. **Id.** The following day, November 16, 2006, Movant called Attorney Radasill from the detention facility and Attorney Radasill apologized for not meeting with him at the courthouse and assured Movant that he would file a Notice of Appeal. Afterward, Movant learned that the Notice of Appeal had to be filed within ten days of the judgment of conviction, so he attempted to contact Attorney Radasill several times by telephone from the detention; his attempts were unsuccessful. **Id. @ ¶ 17.** Movant's father, James William Jennings, Sr., call and he was assured by Attorney Radasill that the Notice of Appeal would be timely filed. **Id. @ ¶ 18.** Movant's companion, Tonya Morgan, also called Attorney Radasill and he assured her too that the Notice of Appeals would be timely filed. **Id. @ ¶ 18.**

Subsequently, Movant was transferred from the CTF/CCA Detention Facility to USP Lewisburg, then to his present confinement at FCI McKean on January 19, 2007. After he received his legal property, Movant contacted Attorney Radasill who informed him that he had not filed the Notice of Appeal and that Movant should file it himself. **Id. @ ¶ 19.** Understanding that it was too late file a Notice of Appeal or too request for an extension of time to do so, Movant wrote the Court complaining about Attorney Radasill's ineffective assistance and in separate letters to the court clerk also requested copies of the transcript and related court documents. **Id. @ ¶ 20.**

**A. Deficient Performance:**

In **Roe v. Flores-Ortega**, 528 U.S. 770; 145 L.Ed.2d 985; 120 S.Ct. 1029 (2000),

--5a--

The Supreme Court held that a defense attorney is not obligated to file a notice of appeal under any per se rule; however, where a defendant was requested that counsel do so and counsel disregard such a specific instruction, such conduct is professionally unreasonable. **Roe, supra.** 527 U.S. @ 477. "This is so because a defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice." **Id.** The failure to do so, "cannot be considered a strategic decision," **Id.**, because "filing a notice of appeal is a purely ministerial task, and failure to file it reflects inattention to the defendant's wishes." **Id.** Review is based upon the totality of the circumstances. **Roe, @ 480.**

In the case sub judice, Attorney Radasill was patently inattentive to Movant's request to file a Notice of Appeal. As stated, Movant requested such after the sentencing hearing and communicated this request repeatedly on subsequent occasions himself and by others. **Jennings' Decl. @ ¶¶ 17-18.** Accordingly, Attorney Radisill failure to performance the ministerial task of filing the notice constitutes deficient performance under the **Strickland** two-prong test. **Roe,** 527 U.S. @ 477-78.

**B. Prejudice:**

But for Attorney Radasill's deficient performance in falling to timely execute the ministerial task of filing the requested Notice of Appeal, Movant would have been able to litigate his appeal as of right. Because counsel's failure to act deprived him of this right, prejudice is established. **Roe, supra.** @ 484-85.

Accordingly, Movant is entitled to a direct appeal as of right and he respectfully submits that this Court should vacate his sentence and reimposed it for purposes of providing Movant a jurisdictional means to file a timely Notice of Appeal.

**Ground Two (continued):**

potential sentencing range from 100-125 to 120-150 months. Although Attorney Radasill explained that under the advisory guidelines the Court could imposed a non-guideline sentence which comported with the plea agreement range of 100-125 months, Movant indicated that under the other sentencing factors of 3553(a), his extensive criminal history could militate against a non-guideline sentence. Movant then advised Attorney Radasill that in 1977 while in the U.S. Marine Corps he was diagnosed as bi-polar and had not maintained the medicinal treatment prescribed for that condition nor participated in any form of therapy. This information is also documented in the PSR @ ¶137. Movant asked Attorney Radasill to investigate this matter and determine whether it could be used to mitigate the seriousness of his past criminal history. Attorney Radasill indicated that he would investigate this issue, however, he never mentioned anything further about it to Movant and Movant assumed that Attorney Radasill had investigated the matter and decided it was not supportive.

**A. Substantive Law:**

Claims of ineffective assistance of counsel are evaluated under the two-prong test of **Strickland v. Washington,** 466 U.S. 668; 104 S.Ct. 2052; 80 L.Ed.2d 674 (1984). To succeed on such a claim, Movant must show both deficient performance of counsel based on an objective standard of reasonableness, and prejudice as a result of such deficiency such that confidence in the result of the latter sentencing proceedings is undermined. **Id.** @ 694; 104 S.Ct. 2052. Although the **Strickland** test was formulated for application in a capital case, its provisions are routinely applied to non-capital cases. **See Glover v. United States,** 531 U.S. 198; 121 S.Ct. 969; 148 L.Ed.2d 604 (2001) (holding that a 6 to 21 month increase in the

defendant's sentence fulfilled the "prejudice" prong at the second step of the Strickland test); see also Davis v. Grigas, 443 F.3d 1155, 1159 (CA 9, 2006).

To conduct the Strickland analysis, a reviewing court must determine whether in light of all the circumstances the identified acts or omissions were outside the wide range of professionally competent assistance. Kimmelman v. Morrison, 477 U.S. 365, 386; 106 S.Ct. 2574; 91 L.ed.2d 305 (1986). Generally, judicial scrutiny of counsel's performance must be highly deferential and strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable. Strickland, 466 U.S. @ 690. However, when the "quantum" of evidence already known to counsel would lead a reasonable attorney to investigate further and counsel fails to do so, his or her performance is unreasonable. Wiggins v. Smith, 539 U.S. 510, 524; 123 S.Ct. 2527; 156 L.Ed.2d 471 (2003); see also United States v. Gray, 878 F.2d 702, 711 (CA 3, 1989) ("Counsel can hardly be said to have made a strategic choice against pursuing a certain line of investigation when s/he has not yet obtained the facts on which such a decision could be made."); see also Blystone v. Horn, No. 99-490; Slip. op. @ 120 (W.D. Pa. March 31, 2005) ("Trial counsel's failure to obtain records from [defendant's] background or request expert mental health assistance was not based on any tactical decision. Rather, it resulted from his inadequate preparation.").

B. Deficient Performance:

In this case, Attorney Radasill was informed before the sentencing hearing that Movant had been diagnosed as bi-polar. See e.g. PSR @ ¶ 137. As stated, Movant personally informed Attorney Radasill of this and it is also documented in the PSR. See Jennings' Decl. @ ¶ 10 ; PSR @ ¶ 137. As a matter of law, a bi-polar condition is a basis for downward departure under 5K2.13 of the U.S.S.G. However, because Attorney Radasill did not investigate the factual basis of Movant's bi-polar diagnosis, he was unaware of the legal significance of this condition.

(i). Diminished Capacity/§ 5K2.13:

Section 5K2.13 of the U.S.S.G., states as follows:

> A downward departure may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity, and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense. Similarly, if a departure is warranted under this policy statement, the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense.

> However, the court may not depart below the applicable guideline range if (1) the significantly reduced mental capacity was caused by the voluntary used of drugs or other intoxicants; (2) the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence; (3) the defendant's criminal history indicates a need to incarcerate the defendant to protect the public; or (4) the defendant has been convicted of an offense under chapter 71, 109A, 110, or 117, of title 18, United States Code.

At the time Movant was sentenced, the law was well established that if a defendant suffered from a significantly reduced mental capacity he or she may be eligible for a downward departure pursuant to section 5K2.13 of the guidelines. See U.S. v. McBroom, 124 F.3d 533, 538 (CA 3, 1997); U.S. v. Leandre, 132 F.3d 796 (D.C.

--5c--

Ground Two (Continued):

Cir. 1998). U.S. v. Long, 185 F.Supp.2d 30, 47 (D.C.C. 2001)(recognizing the volitional prong of the diminished capacity provision). The term "reduced mental capacity" includes both "cognitive" and "volitional" impairments. **McBroom, supra.** @ 549; **Long, supra.** @ 47. As noted in the **McBroom** case, "[a] person may be suffering from a reduced mental capacity for the purposes of section 5K2.13 if either: (1) the person is unable to absorb information in the usual way or to exercise the power of reason; or (2) the person knows what he is doing and that it is wrong but cannot control his behavior or conform it to the law." **Id.** @ 548.

A defendant must demonstrate by the preponderance of evidence that his mental capacity was significantly reduced hence he is thereby entitled to a downward departure. See U.S.S.G. § 6A1.3, Commentary; **Long, supra.** @ 45(citing cases). Whether the mental capacity is significantly reduced is to be determined by the sentencing court on a case by case basis. **McBroom, supra.** @ 548 n. 13 & 14 (citing cases). Also, a departure, if granted, should reflect the extent to which the offender's reduced capacity contributed to the commission of the offense. **Id.** @ 548.

(ii). Impulse-Control Disorders:

According to the American Psychiatric Association the following summary describes the primary characteristics of Impulse-Control Disorders:

> The essential feature of Impulse-Control Disorders is the failure to resist an impulse, drive, or temptation to perform an act that is harmful to the person or to others. For most of the disorders in this section, the individual feels an increasing sense of tension or arousal before committing the act and then experiences pleasure, gratification, or relief at the time of committing the act. Following the act there may or may not be regret, self-reproach, or guilty. **(American Psychiatric Assoc., Diagnostic And Statistical Manual of Mental Disorder 609 (4th ed. 1994) ("DSM-IV").**

This diagnostic description of impulse-control disorders has been applied by courts to explain lack of remorse. In **U.S. v. Schneider, 429 F.3d 888, 893 (CA 9, 2005),** the Ninth Circuit Court of Appeals considered evidence of Schneider's impulse-control disorder to evaluate his capacity to exercise remorse. The court noted that his doctor's psychiatric revaluation indicated that "[his] severe mental illness [was] directly related to his inability to appropriately indicate his guilt, remorse, and full acceptance of responsibility for his fraudulent acts." **Id** @ 893. Significantly, Schneider's impulse-control disorder was complicated by his bipolar disorder which involved symptoms of both Manic and Depressive Episodes and ongoing symptoms of Schizophrenia. **Id.** @ 889.

(iii). Bipolar/Cyclothymic Disorder (DSM-IV, 301.13):

Cyclothymic Disorder is a chronic bipolar disorder consisting of short periods of mild depression and short periods of hypomania. **See. Ex. A.** These symptoms may last a few days to a number of weeks. The onset is separated by short periods of normal mood. Individuals with cyclothymia are never totally free of symptoms of either depression or hypomania for more than a number of months at a time. **Ex. B** @ pp. 1-4.

This information is significant as it supports the fact that Movant's bipolar condition may have been diagnosed in this category hence would not be excluded under the three specific factors set forth as exceptions to departure in Section

5K2.13.

**(1). Voluntary Use of Drugs or Other Intoxicants:**

Although § 5K2.13 precludes departure when the significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants, bipolar conditions are not foreclose by this exception. Specifically, it is a medical fact that "the symptoms of chronic bipolar disorder is "not directly caused by a generally medical condition or -- the use of any substances, including prescription medications." **See Ex. A @ p. 1.**

In **McBroom,** the Court noted that McBroom used cocaine and drank extensively. **Id.** 124 F.3d @ 535-536. In fact, McBroom spent in excess of $300.00 per week on drugs. **Id.** 535. From 1984 to 1993, he was treated in four different rehabilitation programs. **Id.** @ 535-36. The Court, however, noted that as explained by McBroom's expert witness Cyclothymic and Impulse Disorders involve a reduced capacity for choice and acting under the influence of compulsion due to the psychiatric disorder. **Id** 540. This condition is not directly caused by voluntary use of drugs or other intoxicants, rather it is consistent with that of "significantly reduced mental state" the affect of which involves a overwhelming quality of the urge to commit the action toward which the individual feels driven. **Id.** "In most cases of impulse disorder, attempts to not act in accordance with the compulsion is associated with increasingly painful states of tension and agitation which can generate profound mental suffering." **Id.** It is also probative that "the impulse disorder may not be obvious in syndromes where there may appear to be a motive for the individual's actions [.]" **Id.** In other words, situations which suggests that an individual suffering from impulse disorders is acting for reasons motivated by an obvious objective, is inconsistent with the actual affect of the impulse disorder."[1] **Id.** @ 540-41. This is so because the affect of the impulse disorder creates "an attempt to control the overwhelming mental pain and tension that may accompany an unfulfilled compulsion." **Id.** Accordingly, in this case the question is not whether the voluntarily use of drugs was involved but rather it is whether there is a casual link between Movant's mental condition and the commission of the crime. **See Schneider, supra.** @ 891. Movant submits that the proper psychological evaluation would have evinced that there was such a link.

**(2). Actual Violence or a Serious threat of Violence:**

The District of Columbia Court of Appeals considered the question whether the offense of bank robbery committed with the use of a threating demand note constituted a violent offense that forecloses application of a downward departure under 5K2.13. **See U.S. v. Chatman,** 986 F.2d 1446, 1448-53 (D.C. Cir. 1993).[2] The Court held that the district court must consider all the facts and circumstances of a case in deciding whether the crime is a "non-violent offense" under section 5K2.13 of the Guidelines. **Id.** @ 1453. In the instant case, the facts are similar to those in **Chatman.** Movant's offenses of conviction were for unarmed bank robbery. 18 U.S.C. 2113(a). In each of the counts of conviction he used a demand note to facilitate the robbery. **see** PSR @ ¶¶ 9-22. No actual acts of violence occurred however and the circumstances did not create the potential for injury to anybody.

---

1/  Attorney Radasill was unable to conclude that as a matter of strategy, Movant's voluntary use of drugs foreclosed the application of § 5K2.13. Without an evaluation by a qualified mental health specialist there was simply not enough evidence to forgo a thorough investigation of this potential basis for downward departure.

2/  The language used in § 5K2.13, "a non-violent offense", when the Chatman decision was decided has since been modified. **See U.S.S.G. Amendment #674; Appendix C (Nov. 1, 2004).** The change, as stated heretofore, was stylistic and does not undermine the validity of the **Chatman** decision. In fact, it, as argued above, supports it.

--5e--

**(3). Facts and Circumstances of Offense Indictate A Need To Protect the Public:**

As specified above, Movant's case did not involve the use of a firearm or another deadly weapon (the offenses are unarmed bank robbery). In fact, this aspect of Movant's case is left to the discretion of the district court and therefore was open to argument by Attorney Radasill. If the psychological evaluation supported a finding of diminished capacity then the Court could in its discretion considered this factor under 5K2.13. In essence, this factor is akin to that under § 3553(a)(2)(C), which requires the Court to consider "the need for the sentence imposed to protect the public from further crimes of the defendant...." **18 U.S.C. § 3553(a)(2)(C).**

Because Attorney Radasill had a quantum of evidence that would lead a reasonable attorney to investigate further Movant's bipolar condition and its affect on his behavior during the criminal offenses and failed to do so, his performance was deficient. **Wiggin v. Smith, 539 U.S. @ 524.**

**C. Prejudicial Impact:**

The characteristics and criminal history of Movant were of prominent concern to the Court. During the sentencing hearing, the Court commented about Movant's extensive criminal history and drug addiction and analogized it with the pattern of behavior that his relative demonstrated without change throughout life. Without the insight of the affects of bipolar disorders, this Court could not understand the actual impetus behind Movant's past criminal history. Movant attempted to articulate his condition to the Court during allocution, however, he too did not understand the nature of his bipolar condition and its casual link to his criminal behavior. All he could say to the Court is that he needed help. Movant was employed at the time when some of the offenses occurred with the Washington Area Transit Authority (WATA) from June 24, 2003, until November 14, 2005. **See PSR @ ¶ 153.** He earned $16 per hour. He could not, from a psychological perspective, explain to this Court how he was compelled to engaged in the criminal activities related to this case, despite the job security he had with WATA. He concluded that it was drug related; however, he now realizes that the actual impetus was his bipolar condition. **See U.S. v. Checoura, 176 F.Supp.2d 310, 315 (D.N.J. 2001) (explaining how linguistical explanation by a defendant must be considered in context with the whole sequence of discrete physical and mental activities related to the incident in question); see also United States v. Carucci, 33 F.Supp.2d 302, 303 (S.D.N.Y 1999).**

Attorney Radasill's failure to investigate Movant's bipolar condition by employing the services of a psychiatrist to properly evaluate the nature of the condition and its effect on Movant's behavior during each of the criminal episodes, prevented this Court from making an informed determination before imposing sentence.

**(1). Guidelines/Impact of Plea Agreement:**

Under the terms of the plea agreement, the parties concurred that the appropriate sentencing range was 100 to 120 months. However, because of the threat of death this Court determined was involved in the offenses, the potential sentencing range was computed at 125 to 150 months. Prior to sentencing, the Government filed a memorandum acknowledging that the two-level adjustment for a threat of death was correct, but indicating that the Government stood by the 100 to 120 months range of the plea agreement because its interest with regard to the threat of death was satisfied by the five level increase for the multiple counts. **See (DE #20 @ pp. 4-5).** Under the advisory guidelines, the Court had discretion to depart from the 125 to 150 months guideline sentencing range and to impose an sentence within the plea agreement range of 100 to 120 months. Had Attorney Radasill properly prepared

--5f--

and presented grounds for a departure under the provisions for diminished capacity; it is a reasonable probability that the outcome of the sentencing proceedings would have been different. See **Kyles v. Whitley**, 514 U.S. 419, 434 (1995) (indicating **that a defendant does not need to show that it is more likely than not that counsel's deficiencies altered the outcome of the proceedings, hence the standard for prejudice is a less demanding standard than the preponderance standard**); see also **Hull v. Kyler**, 190 F.3d 88, 110 (CA 3, 1999) (accord).

Accordingly, Movant is entitled to resentencing based on Attorney Radasill's ineffective assistance at sentencing.

**D. Evidentiary Hearing:**

Title 28 U.S.C. § 2255 provides for an evidentiary hearing "[u]less the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief ...." 28 U.S.C. § 2255. A federal court in a habeas proceeding must hold an evidentiary hearing when the petitioner alleges facts which, if true, would entitled him to relief. **Townsend v. Sain**, 372 U.S. 293, 312 (1963). Ineffective assistance of counsel claims generally, but not always, rely on evidence outside the record. Thus, when a colorable Sixth Amendment claim is presented, and where material facts in dispute involve inconsistencies beyond the record, a hearing is necessary. See **Tse v. U.S.**, 290 F.3d 462, 464 (CA 1, 2002) (per cuiram) **(evidentiary hearing required for allegation of ineffective assistance of counsel)**; **Smith v. U.S.**, 348 F.3d 545, 554 (CA 6, 2003) **(evidentiary hearing required for claim of ineffective assistance of counsel because factual record insufficiently developed).**

In the case, sub judice, Movant's ineffective assistance of counsel claims are not rebutted or otherwise conclusively belied by the record, files, or the motion to vacate itself. In fact, the claim that Attorney Radasill failed to investigate and develop evidence regarding Movant's documented bipolar condition is supported by the record. See PSR @ ¶ 137. If true, counsel's failure to present evidence that Movant suffered from a significantly reduced mental capacity at the time of the offenses of conviction and was thereby eligible for a downward departure pursuant to 5K2.13 of the guidelines, would entitled Movant to relief. Accordingly, an evidentiary hearing is required pursuant to Rule 8 of the Rules Governing Section 2255 Cases.

Date: 11/14/07

Timothy Jennings #07339-016
Movant/Pro-se
FCI McKean
P.O. Box 8000
Bradford, PA 16701

AO 243 (Rev. 5/85)

    D. Ground four: _____ N/A _____

    Supporting FACTS (state *briefly* without citing cases or law): _____

_____ N/A _____

13. If any of the grounds listed in 12A, B, C, and D were not previously presented, state briefly what grounds were not so presented, and give your reasons for not presenting them: The grounds listed in 12A are premised on the rubric of ineffective assistance of counsel and address counsel's failure to file a Notice of Appeal. This omission by the counsel deprived Movant of his right to direct appeal. This in turn precluded him from raising second argument on direct appeal. Furthermore, the second ground of ineffective assistance of counsel is premised on facts not developed in the extant record. Accordingly, these claims are properly presented for collateral review.

14. Do you have any petition or appeal now pending in any court as to the judgment under attack?
    Yes ☐ No ☒

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

    (a) At preliminary hearing __Tony Axam, Jr.__/Office of the Federal Public Defender/625 Indiana Avenue, N.W./Suite 555/Washington, D.C. 20004

    (b) At arraignment and plea __James W. Rudasill, Jr.__/717 D Street, N.W./Suite 310/Washington, D.C. 20004

    (c) At trial _____ N/A _____

    (d) At sentencing __James W. Rudasill, Jr.__ (same).

(6)

AO 243 (Rev. 5/85)

    (e) On appeal _____ N/A _____

    (f) In any post-conviction proceeding _____ N/A _____

    (g) On appeal from any adverse ruling in a post-conviction proceeding _____ N/A _____

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at approximately the same time?
Yes ☒ No ☐

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ☐ No ☒

    (a) If so, give name and location of court which imposed sentence to be served in the future: _____
_____ N/A _____

    (b) Give date and length of the above sentence: _____
_____ N/A _____

    (c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes ☐ No ☐

Wherefore, movant prays that the Court grant him all relief to which he may be entitled in this proceeding.

_____ **None** _____
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

_11/14/07_
(date)

_Timothy Ennins_
Signature of Movant